UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KHAIR AHMAD NAIKPAY,

    Plaintiff,

v.

                                  Case No. 2:25-cv-1167-KCD-DNF

ELISA S. SUKKAR, ASSISTANT
CHIEF IMMIGRATION JUDGE,
MIAMI KROME (DETAINED)
IMMIGRATION COURT,
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW; AND
FIELD OFFICE DIRECTOR,
MIAMI FIELD OFFICE, MIAMI
FIELD OFFICE, U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT,

    Defendants.
_____/

## ORDER

Petitioner Khair Ahmad Naikpay has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.)[1] He claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act ("INA"). (*Id.* at 14-15.) Respondents oppose the petition. (Doc. 17.) For the reasons below, the petition is **DENIED**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Naikpay illegally entered the United States through California on December 12, 2022. (Doc. 1 ¶ 1.) Important for reasons discussed below, he was apprehended at the border and eventually released on humanitarian parole. (*Id.* ¶¶ 3-5; Doc. 1-3 at 4-5.) In July 2025, ICE issued a Form I-862, Notice to Appear. (Doc. 17-1.) It charged Naikpay with unlawful presence under 8 U.S.C. § 1182(a)(6)(A). (*Id.* at 1.) Months later, he was arrested by ICE agents at his workplace. (Doc. 1 ¶ 11.) After processing, he landed at Alligator Alcatraz in the Middle District of Florida. (*Id.* ¶ 13.)

## II. Discussion

Naikpay's habeas petition raises one substantive claim—that his detention violates the INA because he has been denied a bond hearing. (*Id.* at 15.) Sections 1225 and 1226 of the INA govern the detention of noncitizens before a final order of removal. The former provision covers "inadmissible arriving aliens" who are "present in the United States [but have] not been admitted." 8 U.S.C. § 1225(a)(1). So-called "'applicants for admission' in the language of the statute." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Pertinent here, § 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Id.* The only exception is release "on parole for urgent humanitarian reasons or significant public benefit." *Id.* at 288.

On the other hand, § 1226 has historically "authorize[d] the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289 (emphasis added). Section 1226(a) sets out a discretionary detention framework for aliens arrested and detained "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). While the arresting immigration officer makes an initial custody determination, noncitizens detained under § 1226(a) may appeal that decision in a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306.

According to Naikpay, he is entitled to a bond hearing under § 1226. (Doc. 1 ¶ 14.) And his custody "is not lawfully authorized under 8 U.S.C. § 1225(b)(2)(A)." (*Id.* ¶ 14.) But this argument cannot survive under the existing record. It is unrebutted that Naikpay was apprehended at the border. That puts him squarely under § 1225. *See, e.g.*, *Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) ("[Section] 1225 applies to noncitizens arriving at a border or port and are presently seeking admission into the United States."). The fact that Naikpay spent time in the United States after being released on humanitarian parole—and was eventually apprehended in the country—does not change his classification. *See Jennings*, 583 U.S. at 288 ("[W]hen the purpose of the parole has been served,

3

'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" (quoting 8 U.S.C. § 1182(d)(5)(A))); *Moore v. Nielsen*, No. 4:18-cv-01722-LSC-HNJ, 2019 WL 2152582, at *3 (N.D. Ala. May 3, 2019) ("[A]lthough aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country.").

Section 1225 says nothing "whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. So Naikpay's continued detention without a bond hearing cannot be in violation of the INA.

Naikpay also points to a pending California case that certified a class action of aliens who are in immigration detention and being denied access to a bond hearing. *See Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). Naikpay claims he is entitled to an injunction based on the judgment from that case. The Court disagrees. Naikpay falls outside the proposed class since he was "apprehended upon arrival." *Id.* at *9.

4

## III. Conclusion

Based on the record provided, which stands unrebutted, Naikpay's detention does not violate the INA or the Constitution. He is thus not entitled to habeas relief, and the petition (Doc. 1) is **DENIED**. The Clerk is directed to terminate any pending motions and deadlines and close the case.

**ORDERED** in Fort Myers, Florida on January 7, 2026.

Kyle C. Dudek
United States District Judge